

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 30, 1972

Honorable Henry Wade
District Attorney
Dallas County Government Center
Dallas, Texas   75202

Opinion No. M-1205

Re:   Constitutionality of the
Insurance Holding Company
System Regulatory Act,
Article 21.49-1, Texas
Insurance Code

Dear Mr. Wade:

In your recent letter you state that you believe the above mentioned statute to be unconstitutional for various reasons and ask this office for an official opinion on the matter.  It is our opinion that the statute is constitutional with respect to each of the questions which you raise, namely:

"1.   Is the caption or title of Article 21.49 sufficient to meet the legal requirements for constitutionality?

"2.   Does the concept of 'control' as used in the Act render it unconstitutionally vague and unenforceable?

"3.   Does the Act so impair the right to contract as to be unconstitutional?

"4.   Does the Act violate due process under State and Federal prohibitions?

"5.   Does the Act unconstitutionally create a mandatory presumption that a control person, as defined in the Act, will deal with the company contrary to its interest, without any prior fact determination; further, because of such presumption, is the Act so broad as to prohibit

-5907-

a control person in one insurance company from
dealing with another insurance company in which
said control person owns no stock without prior
approval of the Commissioner of Insurance?

In considering the constitutionality of a statute, the courts do not
presume a statute to be invalid. On the contrary, they presume any
statute under attack to be valid. As was stated in Vernon v. State, 406
S. W. 2d 236, (Civ.App. 1966, error ref. n. r. e. ):

"In the field of constitutional law, no stronger
presumption exists than that which favors the
validity of a statute. A legislative act must be
sustained unless it is clearly invalid beyond a
reasonable doubt. State v. City of Austin, 160
Tex. 348, 331 S. W. 2d 747 (1960); Trapp v.
Shell Oil Co. , 145 Tex. 323, 198 S. W. 2d 424 at 440
(1946). The strength of this presumption is nurtured
by an appreciation of the needs of the people and by
a recognition that the laws are directed to problems
manifest by experience. The courts will not exert
ingenuity to find reasons for holding a statute invalid;
rather, they will sustain its validity even if it is
valid by the narrowest margins. Texas Nat. Guard
Armory Board v. McCraw, 132 Tex. 613, 126 S. W. 2d
627-634 (1939); Dendy v. Wilson, 142 Tex. 460. 179
S. W. 2d 269-277 (1944). This is particularly true
when the statute pertains to governmental policies
established in the interest of public health, safety,
and welfare as is present in this statute. Lombardo
v. City of Dallas, 124 Tex. 1, 73 S. W. 2d 475, 486
(1934), 12 Tex. Jur. 2d Constitutional Law, Sec. 36,
p. 380. "

The Insurance Holding Company System Regulatory Act (hereinafter
called the "Act") grew out of legislative concern with the trend toward
conglomeration. There has been a recent trend within the insurance
industry toward restructuring into holding company systems. As was
stated by Professor J. Leon Lebowitz in Corporations, Annual Survey of
Texas Law, 26 Southwestern Law Journal at page 91, (1972):

> "In keeping with this trend and possibly due
> to concern with forestalling yet another crisis
> of confidence within the Texas insurance industry
> through takeovers by corporate raiders or stock
> manipulators, a comprehensive law regulating
> the acquisition of control of Texas insurers
> through holding companies and other devices
> has been added to the Texas Insurance Code."

In light of the strong presumption that exists in favor of the validity of a statute and the fact that the public welfare is directly and acutely involved in the regulation of these quasi-public financial institutions, this office must consider any challenges to the constitutionality of this statute in accordance with the above cited rules of law to be applied by our courts.

Concerning your first question, we would point out, that while the caption of the Act is broad, it is not deceptive and it gives fair notice of the contents of the statute, as required by Section 35 of Article III of the Texas Constitution. The caption to the bill reads as follows:

> "An Act adding a new Article 21.49 to the Texas
> Insurance Code to be known as the Insurance
> Holding Company System Regulatory Act, relating
> to regulation of insurance holding companies, sub-
> sidiaries, and affiliates, and their transactions with
> insurance companies; prohibiting certain acts;
> providing penalties and declaring an emergency."

The fact that the Act contains provisions for enforcement purposes does not mean that these provisions must be referred to in the caption. In Continental Bus System, Inc. vs. Carney, 310 S. W. 2d 676, (Civ. App., 1958, error ref. n. r. e.) the caption of the statute stated that it was an act amending certain other statutes "by designating corporations subject to franchise tax." The court quoted with approval the following statement of the law from Texas Jurisprudence:

> "Incorporate in the body of an act of the means
> by which its objects may be accomplished does not
> render the act obnoxious to the constitutional
> inhibition against bills containing more than one

> subject. Accordingly, an act with one leading
> subject, which is expressed in its title, may
> contain appropriate provisions designed or tending
> to accomplish, effectuate or enforce the general
> object or purpose of the law. When the title expresses
> the main subject dealt with by the act, it embraces
> any lawful means for the accomplishment of the legis-
> lative object. It is immaterial that such subsidiary
> provisions are not expressly mentioned in the title,
> if they are legitimately connected with the subject
> expressed."

This case also refers to the well-established rule of law that the caption will be liberally construed in favor of its constitutionality.

In our opinion, the caption of the Act complies with the requirements of Section 35 of Article III of the Texas Constitution. We have taken into consideration the numerous provisions of the Act which you view as not being covered by the caption and we find them all to be mere provisions for the accomplishment of the purposes expressed in the caption.

Your second question is whether the concept of "control" as used in the Act renders the Act unconstitutionally vague and unenforceable.

Section 2(c) of the Act provides as follows:

> "(c) Control. The term 'control', including the
> terms 'controlling,' 'controlled by' and 'under
> common control with,' means the possession,
> direct or indirect, of the power to direct or cause
> the direction of the management and policies of
> a person, whether through the ownership of voting
> securities, by contract other than a commercial
> contract for goods or nonmanagement services,
> or otherwise, unless the power is the result of
> an official position with or corporate office held by
> the person. Control shall be presumed to exist if
> any person, directly or indirectly, owns, controls,
> holds with the power to vote, or holds irrevocable
> proxies representing, 10 percent or more of the
> voting securities or authority of any other person.

> This presumption may be rebutted by a showing
> made in the manner provided by Section 3(i)
> that control does not exist in fact.  The commis-
> sioner may determine, after furnishing all
> persons in interest notice and opportunity to be
> heard and making specific findings of fact to
> support such determination, that control exists
> in fact, notwithstanding the absence of a pre-
> sumption to that effect, where a person exercises
> directly or indirectly either alone or pursuant to
> an agreement with one or more other persons such
> a controlling influence over the management or
> policies of an authorized insurer as to make it
> necessary or appropriate in the public interest or
> for the protection of the policyholders or stock-
> holders of the insurer that the person be deemed
> to control the insurer. "

In our opinion, this definition is neither vague nor unenforceable.
While it deals with sophisticated and technical corporate procedures, it
is felt that one who is qualified to manage the affairs of a corporation will
have no difficulty understanding the meaning of the concept of "control"
as embraced in the Act.

The cited definition of the word "control" principally comes from the
Model Legislation on the subject adopted by the National Association of
Insurance Commissioners.  In an analysis of that model legislation
(Proceedings of N. A. I. C. , 1969, Vol. 1, page 196) it is stated that the
definition of control is derived from the Savings and Loan Holding
Company Amendments of 1967 (12 U. S. C. A. , Sec. 1730a), the Bank
Holding Company Act of 1966 (15 U. S. C. A. , Sec. 1841) and the Investment
Company Act of 1940 (15 U. S. C. A. , Sec. 80a-2 (a)(9)).  In connection with
the use of the control concept in relation to the Investment Company Act
of 1940, there are several reported cases where the courts had no difficulty
in applying the concept in highly complicated business relationships so
that there is no doubt that the concept is workably precise.  See: Phillips
vs. Securities Exchange Commission, 388 F. 2d 964 (7th Cir. , 1968);
Willheim vs. Murchison, 342 F. 2d 33 (2nd Cir. , 1965), cert. denied,
382 U. S. 840, 86 S. Ct. 36, 15 L. Ed. 2d 82 (1965); and Acampora vs.
Berkland, 220 F. Supp. 527 (D. Colo. , 1963).

It should be noted that the Texas Legislature did add the following words to the part of the definition giving the regulatory agency power to find a person in control without the statutory presumption:

> ". . . where a person exercises directly or indirectly either alone or pursuant to an agreement with one or more other persons such a controlling influence over the management or policies of an authorized insurer as to make it necessary or appropriate in the public interest or the protection of the policyholders or stockholders of the insurer that the person be deemed to control the insurer."

If there was ever any doubt that the definition as used in the model act lacked a proper standard for the regulatory agency to follow, the Texas Legislature foreclosed that issue.

Your third question deals with the impairment of obligations of contract. You conclude that the Act affects rights accruing before the Act became effective, and, therefore, constitutes an impairment of the obligation of contracts within the meaning of the provisions of the Texas and United States Constitutions. We must respectfully disagree.

Corporations, being creatures of the state, remain subject to its regulation and control. Article 9.12 of the Business Corporation Act expressly reserves to the state the power to change the laws governing corporations. This statute provides as follows:

> "The Legislature shall at all times have the power to prescribe such regulations, provisions, and limitations as it may deem advisable, which regulations, provisions, and limitations shall be binding upon any and all corporations subject to the provisions of this act, and the Legislature shall have power to amend, repeal, or modify this act."

In Jefferson County Title Guaranty Company v. Tarver, 29 S. W. 2d 316, 119 Tex. 410 (1930), the court said:

"Under the above constitutional and statutory provisions, we hold that the company having been incorporated under the Constitution and general laws of Texas, expressly reserving in the Legislature the right to alter, reform, or amend incorporation, laws, and charters is subject to the act of 1929, requiring a capital stock of $100,000 as a condition precedent to doing business in this state, and that such statutory requirement does not impair any contract evidenced by the charter granted by the state to the company. We further hold that the Constitution and general laws of this state in force at the time the charter here under consideration was granted are parts thereof to the same extent, and with the same force and effect, as if they were expressly incorporated or written therein; and this being the case, the state's exercise of its reserved power to require an amendment to the charter of this concern increasing its capital stock to $100,000, as a condition precedent to continuing in business, does not impair or abrogate any contract between the company and its members, between the state and the company, or between the stockholders of the company and the state."

The power of the Legislature to control and regulate corporations generally and insurance companies in particular, may not be superceded by private contracts, which are subject to this reserved power of the state to regulate. See Daniel v. Tyrrell & Garth Inv. Co., 93 S.W.2d 372, 127 Tex. 213 (1936); Attorney General's Opinion No. M-407 (1969).

We have studied the numerous provisions of the statute which you consider to be violative of the constitutional provisions regarding impairment of contracts, and we view these challenges to be governed by the foregoing principles. We find the statute to be constitutional per se.

Your fourth question concerns whether the Act violates the state and federal constitutional prohibition against seizure of property without due process of law. In your brief you contend: "The seizure of voting

securities and the power to declare a contract void, together with the power to invalidate an authorized shareholder meeting, constitutes arbitrary and unreasonable remedies with no substantial relation to the protection of an insurance company's shareholders or policyholders and of the public. The termination [sic] that control exists thereby requiring registration and reporting is a denial of the due process guarantee."

We do not construe the Act as authorizing seizures. On the contrary, the sections in question establish very adequate court procedures for the litigation of the rights of the interested parties.

In our opinion, the provisions of Section 12, Section 5 and Section 16 of the Act are well within the police powers of the State, as a creator or controller of corporations. In Scanlan v. Home Insurance Company, 79 S. W. 2d 186, 189 (Tex. Civ. App., 1935, error ref.), the court declared:

> "The business of insurance is of public concern and therefore subject to strict regulation and control by the State."

For further discussion of these principles see 44 C. J. S. 518, Insurance, Sections 55 and 56.

As stated above, the statute in question was enacted by the Legislature in an effort to curb very serious abuses in the insurance industry by the employment of the holding company device. It is our opinion that the provisions of the Act constitute a proper exercise of the police powers of the state and that they do not violate due process in the respects advanced in your request and brief.

Your fifth question is as follows:

> "5. Does the Act unconstitutionally create a mandatory presumption that a control person, as defined in the Act, will deal with the insurance company contrary to its interest, without any prior fact determination; further, because of such presumption, is the Act so broad as to prohibit a control person in one insurance company from dealing with another insurance company in which said control person owns no stock without prior approval of the Commissioner of Insurance?"

We do not hold the opinion that the Act creates any such "mandatory presumption." It merely provides for the regulation of holding companies and others who control insurance companies. The Act does not require any administrative body or court to presume that such control is inimical to the interest of the insurance company; it merely puts "control persons" under the administrative surveillance of the Commissioner of Insurance. In our opinion, this is a valid exercise of the police powers of the state under the authority discussed above.

It should be noted that you have presented no specific factual situation in connection with your request and therefore our opinion is necessarily limited to whether the Act is constitutional per se.

## SUMMARY

Article 21.49-1 of the Texas Insurance Code,
which is known as the Insurance Holding Company
System Regulatory Act, is constitutional.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by James Hackney
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Van Thompson, Jr.
Robert Lemens
James Broadhurst
Vince Taylor

SAMUEL D. McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant